## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| REED TIMMER | § | |
| | § | |
| v. | § | CIVIL CASE NO. 4:24-CV-00635-SDJ-AGD |
| | § | |
| TRIUMPH ROOFING AND | § | |
| CONSTRUCTION LLC AND RODDY | § | |
| DODDY AGENCY | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Pending before the court is Plaintiff Reed Timmer's Motion for Default Judgment Against Defendant Roddy Doddy Agency (Dkt. #34) ("Motion"). Having reviewed the Motion and all other relevant filings, the court finds that the Motion (Dkt. #34) should be granted.

## BACKGROUND

***Factual Background***

Plaintiff is a meteorologist who captures video footage of weather events and posts the videos on social media where he has a "large social media presence" (Dkt. #34, at p. 7). Due to his "several million followers/subscribers" on social media, Plaintiff can "finance his endeavors" through the monetization of viewership and subsequent advertisement revenue on his social media pages (Dkt. #34, at pp. 7, 17-18). Plaintiff registered one of his videos, the "Andover Drone Footage" ("the video" or "the footage"), with the "Register of Copyrights on June 3, 2022" (Dkt. #34, at p. 7). Plaintiff's registration number is PA 2-360-287 (Dkt. #34, at p. 7). Defendant Roddy Doddy Agency ("Defendant") is an "online marketing agency specializing in digital advertising and web services," that worked for Defendant Triumph Roofing and Construction LLC ("Defendant Triumph") (Dkt #34, at p. 8). Defendant created social media posts for Defendant Triumph and managed Defendant Triumph's social media pages (Dkt #34, at p. 8). Plaintiff alleges

that Defendant infringed on Plaintiff's copyright by featuring the footage on Defendant Triumph's social media pages without Plaintiff's permission (Dkt. #34, at p. 8). On April 3, 2025, and April 10, 2025, Plaintiff notified Defendant that it breached Plaintiff's copyright, demanded that Defendant pay Plaintiff's licensing fee for the unauthorized use of the footage, and instructed Defendant to cease using the footage (Dkt. #34, at p. 9). Defendant never paid Plaintiff's licensing fee and "publicly disseminated an attribution-free copy of [the footage]," which damaged Plaintiff (Dkt. #34, at p. 9).

### *Procedural Background*

On April 14, 2025, Plaintiff filed an Amended Complaint against Defendant, therein asserting a copyright infringement claim against Defendant (Dkt. #22). Defendant was served on May 7, 2025 (Dkt. #24). Defendant's deadline to answer or otherwise respond to Plaintiff's Amended Complaint was May 28, 2025. However, to date, Defendant has not answered or otherwise appeared.

On May 29, 2025, Plaintiff requested a Clerk's Entry of Default against Defendant (Dkt. #28). On June 2, 2025, the Clerk's Entry of Default was docketed (Dkt. #30). On July 24, 2025, Plaintiff filed a Motion for Default Judgment against Defendant (Dkt. #34), which is presently before the court.

### LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure sets forth certain conditions under which default may be entered against a party, as well as the procedure to seek the entry of default judgment. FED. R. CIV. P. 55. Securing a default judgment involves a three-step procedure: (1) the defendant's default; (2) the entry of default; and (3) the entry of default judgment. *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). A "default" occurs when the defendant does not

plead or otherwise respond to the complaint. *Id.* An "entry of default" is the notation the clerk makes after the default is established by affidavit. *Id.*

"Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (footnotes omitted); *see AAR Supply Chain Inc. v. N & P Enters., LLC*, No. 3:16-CV-2973, 2017 WL 5626356, at *1 (N.D. Tex. Nov. 22, 2017) (explaining that default judgments "are available only when the adversary process has been halted because of an essentially unresponsive party") (citation and internal quotation marks omitted). While "[t]he Fifth Circuit favors resolving cases on their merits and generally disfavors default judgments," this policy "is 'counterbalanced by considerations of social goals, justice, and expediency, a weighing process that lies largely within the domain of the trial judge's discretion.'" *Arch Ins. Co. v. WM Masters & Assocs., Inc.*, No. v3:12-CV-2092-M, 2013 WL 145502, at *2 (N.D. Tex. Jan. 14, 2013) (cleaned up) (quoting *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999)). Federal Rule of Civil Procedure 55(b)(2) grants district courts wide latitude in this determination, and the entry of default judgment is left to the sound discretion of the trial court. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). The entry of a default judgment is reviewed for abuse of discretion, *Sindhi v. Raina*, 905 F.3d 327, 331 (5th Cir. 2018), because of "the seriousness of a default judgment, . . . even a slight abuse of discretion may justify reversal." *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 63 n.1 (5th Cir. 1992) (brackets omitted) (quoting *Williams v. New Orleans Pub. Serv., Inc.*, 728 F.2d 730, 734 (5th Cir. 1984)).

## ANALYSIS

In this case, because Defendant has not answered or otherwise appeared and because Plaintiff obtained an entry of default, Plaintiff has met the first two requirements for a default

judgment. Thus, the only remaining issue is whether a default judgment is warranted. *N.Y. Life Ins. Co.*, 84 F.3d at 141. Courts in the Fifth Circuit utilize a three-part test to determine whether a default judgment is appropriate: "1) whether the entry of default is procedurally warranted, 2) whether a sufficient basis in the pleadings based on the substantive merits for judgment exists, and 3) what form of relief, if any, a plaintiff should receive." *Graham v. Coconut LLC*, No. 4:16-CV-606, 2017 WL 2600318, at *1 (E.D. Tex. June 15, 2017) (citations omitted). In this context, the defendant "admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Wearable Shoe Tree v. Does 1-601*, No. 4:24-CV-334-SDJ, 2025 WL 872524, at *2 (E.D. Tex. Mar. 20, 2025) (quoting *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). However, the defendant does not "concede the truth of allegations of the complaint concerning damages." *Id.* (quoting *Graham*, 2017 WL 2600318, at *1). Applying this framework, the court finds that default judgment against Defendant is appropriate.

### *Whether Default Judgment is Procedurally Warranted*

The court must first determine whether default judgment is procedurally warranted. The Fifth Circuit in *Lindsey* recognized six factors relevant to the inquiry into whether default judgment is procedurally warranted:

> whether material issues of fact exist; whether there has been substantial prejudice; whether the grounds for default are clearly established; whether the default was caused by a good faith mistake or excusable neglect; the harshness of a default judgment; and whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). After reviewing Plaintiff's Motion and all other relevant filings, the court finds that default judgment is procedurally warranted based on the *Lindsey* factors.

**Material Disputes of Fact**

There are no material disputes of fact present in this case. Again, in the event of default, a defendant "admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Nishimatsu Constr. Co., Ltd.*, 515 F.2d at 1206 (internal citations omitted). Here, because Defendant did not answer Plaintiff's Amended Complaint or otherwise appear, Defendant admits Plaintiff's well-pleaded allegations of fact, except damages. *Id.* Therefore, there are no material disputes of fact at issue.

**Substantial Prejudice or Harsh Result**

Entry of default judgment would not be harsh or result in substantial prejudice to Defendant. When a defendant "[fails] to file any responsive pleading or motion" the "harshness of a default judgment" is mitigated. *Wearable Shoe Tree, LLC*, 2025 WL 872524, at *3. Here Defendant did not answer the Amended Complaint or otherwise appear. Additionally, Defendant received ample notice of the suit: Plaintiff filed its Amended Complaint on April 14, 2025 (Dkt. #22) and Defendant was served on May 7, 2025 (Dkt. #24). Furthermore, Plaintiff was properly granted entry of default in his favor on June 2, 2025 (Dkt. #8). Thus, default judgment is not unusually harsh because Defendant had ample opportunity to respond after receiving notice of this action. Moreover, because Defendant failed to appear or otherwise respond, its actions "threaten[] to bring the adversary process to a halt," and Plaintiff has experienced prejudice "in pursuing its rights afforded by law." *Ins. Co. of the W. v. H&G Contractors, Inc.*, No. C-10-390, 2011 WL 4738197, at *3 (S.D. Tex. Oct. 5, 2011) (citation omitted); *John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*, No. 3:12-cv-4194, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013)

(citation omitted). Accordingly, the record supports a finding that a default judgment would not be harsh or result in substantial prejudice to Defendant.

### Grounds for Default Judgment

The grounds for default judgment are clearly established. Default occurs when a defendant fails to plead or otherwise respond to the complaint within the time required by Rule 12 of the Federal Rules of Civil Procedure. FED. R. CIV. P. 55(a); *N.Y. Life Ins.*, 84 F.3d at 141. Moreover, "[w]hen the defendant fails to respond 'to the summons and complaint, the entry of default, or the motion for default,' then grounds for default are clearly established." *Wearable Shoe Tree, LLC v. Does*, 2025 WL 872524, at *3 (citing *Graham*, 2017 WL 2600318, at *2). The record indicates that Plaintiff perfected service of process on Defendant with a copy of the Amended Complaint and summons on May 7, 2025 (Dkt. #24). Therefore, Defendant was required to serve an Answer to the Amended Complaint or otherwise respond. However, as of this date, Defendant has not answered or filed any responsive pleadings. Thus, the court finds that the grounds for default judgment against Defendant are clearly established.

### Excusable Neglect or Good Faith Mistake

The record reflects that Defendant did not default due to excusable neglect or a good faith mistake. Again, Plaintiff properly served Defendant, but Defendant did not respond, nor did it offer evidence that the unresponsiveness was due to a "good faith mistake or excusable neglect" (*See* Dkt. #24). *See Lindsey*, 161 F.3d at 893. Further, nothing in the record indicates that Plaintiff has contributed to the delay of this action or otherwise given the court any reason to set aside the clerk's entry of default.

**Harshness of Default Judgment**

Though default judgment is "a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations," it is appropriate here because Plaintiff is "entitled [to damages] under" 17 U.S.C. § 504. *Sun Bank of Ocala*, 874 F.2d at 276; *See Wearable Shoe Tree*, 2025 WL 872524, at *3. The harshness of default judgment is mitigated when a party only seeks "the relief to which [he] is entitled." *Holladay v. OTA Training, LLC*, No. 3:14-CV-519, 2015 WL 5916440, at *2 (N.D. Tex. Oct. 8, 2015). Here, pursuant to the Copyright Act and 28 U.S.C. § 1961, Plaintiff seeks relief to which he is entitled (Dkt. #34, at p. 21).

**Obligation to Set Aside the Default on Defendant's Motion for Good Cause**

Plaintiff notified Defendant of its copyright infringement on two occasions before Plaintiff initiated suit against Defendant (Dkt. #34-1, at p. 2) Additionally, Defendant's co-owner was personally served with Plaintiff's Amended Complaint (Dkt. #34, at p. 6). Moreover, Defendant's client, Defendant Triumph, filed a breach of contract cross-claim against Defendant for Defendant's copyright infringement (Dkt. #29, at p. 2). When defaults are willful, courts have no obligation to set aside the default judgment. *Lacy v. Sitel Corp.,* 227 F.3d 290, 292 (5th Cir. 2000). In fact, "'when the court finds an intentional failure of responsive pleadings there need be no other finding'" to end this inquiry. *Id.* The context surrounding this default suggests that Defendant's lack of appearance and engagement in this suit was willful; Defendant purposely ignored the suit. *See id.* Thus, the court would not be obligated to set aside the default on Defendant's motion. Accordingly, Plaintiff has met the procedural requirements for default judgment.

### *Basis for Default Judgment on the Pleadings*

After establishing that default judgment is procedurally warranted, the court must determine if there is a sufficient basis for judgment in the pleadings. *Nishimatsu*, 515 F.2d at 1206.

Although Defendant, at this stage, is deemed to have admitted the allegations set forth in the Amended Complaint, the court must review the pleadings to determine whether the Amended Complaint presents a sufficient basis for relief. *Id.* The Fifth Circuit "draw[s] meaning from the caselaw on Rule 8, which sets forth the standards governing the sufficiency of a complaint." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (citation omitted). "Rule 8(a)(2) requires a pleading to contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting FED. R. CIV. P. 8(a)(2)). Ultimately, "[t]he factual allegations in the complaint need only 'be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (footnote and citations omitted)). This "low threshold" pleading standard "is less rigorous than that under Rule 12(b)(6)." *Cunningham v. Crosby Billing Servs., Corp.*, No. 4:18-CV-00043-ALM-CAN, 2018 WL 6424792, at *4 (E.D. Tex. Oct. 14, 2018). Only well-pled facts, not conclusions of law, are presumed true. *Nishimatsu*, 515 F.2d at 1206.

Based on the pleadings and evidence before the court, Plaintiff has sufficiently pled a claim of copyright infringement to warrant the entry of default judgment against Defendant.

### Liability of Defendant

In the context of direct copyright infringement, as alleged here, Plaintiff must plead and eventually establish "(1) ownership of a valid copyright; (2) factual copying; and (3) substantial similarity." *Batiste v. Lewis*, 976 F.3d 493, 502 (5th Cir. 2020). Ownership of a copyright may be established by registration. In fact "[a] certificate of registration, if timely obtained, is prima facie evidence both that a copyright is valid and that the registrant owns the copyright." *Id.* at 501.

As to the second element, factual copying, though rare, factual copying may be satisfied by proof of "direct evidence of copying." *Id* at 502. "Substantial similarity" exists when "a layman would view the two works as substantially similar" when doing a "side-by-side comparison" of them. *Id.* (internal quotations omitted).

Here, Plaintiff, in his Amended Complaint, accuses Defendant of directly "cop[ying] Timmer's copyrighted work from the internet in order to advertise, market and promote [Defendant Triumph's] business activities" through social media (Dkt. #22, at p. 2). Plaintiff explains that the copyrighted work was his "Andover Drone Footage," which was copyrighted under "PA 2-360-287" on "June 3, 2022" (Dkt. #22, at p. 3). Plaintiff alleges that in connection with Defendant's work for Defendant Triumph, Defendant explicitly "copied, displayed, and distributed the Work at issue in this case and made derivatives of the Work without Timmer's authorization in violation of 17 U.S.C. § 501" (Dkt. #2, at p. 6). Below are screenshots from Plaintiff's video footage that were used by Defendant for Defendant Triumph's social media accounts (Dkt. #22-2, at p. 3).





The footage used by Defendant on Defendant Triumph's social media accounts is an exact copy of Plaintiff's copyrighted footage. Accordingly, Plaintiff established that there is a basis for default judgment on the pleadings because accepting Plaintiff's allegations as true, Defendant is liable for copyright infringement.

### *Forms of Relief*

Plaintiff requests the following relief: 1) statutory damages; 2) reasonable attorneys' fees and costs; 3) pre-and post-judgment interest; and 4) a permanent injunction against Defendant (Dkt. #34 at p. 6).

#### **Statutory Damages**

Plaintiff seeks $50,000.00 in statutory damages from Defendant for its willful infringement of Plaintiff's copyright of the video footage at issue (Dkt. #34, at p. 16). Plaintiff claims that Defendant's "conduct and its decision not to defend against [Plaintiff's] claim demonstrate that its conduct is willful" (Dkt. #34, at p. 16). Before filing his Amended Complaint, Plaintiff contacted Defendant on two occasions "in writing of [Plaintiff's] copyrights in the Work, and demanded that it cease the infringing use of the Work and pay a license fee for the unauthorized use of the Work" (Dkt. #34, at p. 9). Additionally, Defendant was served through its "co-owner," Tonya Seay, with

this suit on May 7, 2025 (Dkt. #34, at p. 6). Defendant has never paid Plaintiff's licensing fee or responded to Plaintiff (*See* Dkt. #34, at p. 9). In the event that the court does not find the infringement willful, Plaintiff alternatively seeks $30,000.00 in statutory damages (Dkt. #34, at p. 16).

Pursuant to 17 U.S.C. § 504(b), plaintiffs suing for copyright infringement may recover actual damages and profits or statutory damages. Due to Defendant's lack of cooperation with the suit, Plaintiff elected to seek statutory damages (Dkt. #34, at p. 15). Statutory damages in copyright infringement cases range from $750.00 to $30,000.00 per infringement, though the range increases to $150,000.00 when the infringement is willful. 17 U.S.C. § 504(c)(1)-(2). The effect of statutory damages generally should be to "deter future unlawful conduct by defendants," and courts wield "broad discretion to determine the amount of statutory damages." *Broad. Music, Inc. v. Outlaw Country Soc. Club, Inc.*, No. 6:18-CV-591-JDK, 2019 WL 7882555, at *4 (E.D. Tex. May 24, 2019) [hereinafter *Broad. Music, Inc. I*]. However, enhanced statutory damages are usually assessed "between two and three times the licensing fee that a defendant refused" to pay. *Id*. Courts "may infer willfulness from evidence that notice of a valid copyright was provided to the defendant prior to the infringement." *Id.* A defendant's continued infringement after receiving notice of infringement constitutes willful infringement as well. *Id.*

Factors utilized to assess enhanced "statutory damages in the copyright-infringement context" include

> (1) expenses saved and profits reaped; (2) revenues lost by plaintiff; (3) the value of the copyright; (4) deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendants.

*Wearable Shoe Tree, LLC*, 2025 WL 872524, at *8-9. Plaintiff fails to provide the court with any evidence or information regarding "(1) expenses saved and profits reaped [and] (2) revenues lost

by plaintiff." *See id.* Plaintiff merely explains that he was damaged because the footage is now "less scarce and exclusive" due to Defendant's public dissemination of it (Dkt. #34, at p. 9). Accordingly, the first two factors are neutral. *See id*, at *9.

To support an assessment of factor three, the "value of the copyright," "objective measures demonstrating the value of the" copyright must be presented. *Id.* (citing *GS Holistic, LLC v. Sublime Smoke & Vape LLC*, No. 4:23-CV-241, 2024 WL 4275803, at *7 (E.D. Tex. Sept. 3, 2024), *report and recommendation adopted*, 2024 WL 4267931 (E.D. Tex. Sept. 23, 2024)). Here, Plaintiff proclaims that the copyright "has lost significant value" due to its public dissemination (Dkt. #34, at p. 9). However, Plaintiff did not provide the court with "objective measures" to determine the previous value of the copyright and its current diminished value. *See id.* Likewise, regarding factor four, Plaintiff presents "no information—estimates or otherwise—" about the dissemination of the copyright and how an "increased-statutory-damages award could deter infringement by others." *Id.* Plaintiff asserts on its face that such an award would "create a strong disincentive against infringers intentionally hiding the profits from their infringing conduct in the hope of earning more than they can be held accountable for in actual damages and to deter future violations of copyright law" (Dkt. #34, at p. 16). However, this statement lacks any "basis from which to calculate an appropriate deterrence-based damage award," and based on the pleadings, infringement does not appear to be a widespread issue that Plaintiff suffers from and needs to deter others from engaging in. *Id.* Thus, both factors three and four are neutral.

Factor five, "whether the defendant's conduct was innocent or willful," favors Plaintiff and supports an increased statutory damages award. Based on Plaintiff's Motion and pleadings, the court finds that Defendant willfully infringed on Plaintiff's copyright. As stated above, willful infringement may exist when infringers receive notice of their infringement and take no curative

actions and/or continue their infringement. *See Broad. Music, Inc.*, 2019 WL 7882555, at *4. Here, Plaintiff claims Defendant's infringement was willful, in part, because Plaintiff "notified [Defendant] in writing of [Plaintiff's] copyright in the Work and demanded it appear[] before the Court and pay a license fee for the unauthorized use of the Work…[but] [t]o date, [Defendant] has not appeared or otherwise responded to Plaintiff or the Court" (Dkt. #34, at p. 13). The court finds this analogous to the actions of the defendant in *Broadcast Music, Inc*. *Id* at *5. In *Broadcast Music, Inc*., the court found that the defendant willfully infringed on the plaintiff's copyright after failing to take any action once plaintiff, before suing defendant, wrote to defendant and advised it of its copyright infringement and demanded that defendant cease its activities. *Id.* Here, on April 3, 2025, and April 10, 2025, Plaintiff "notified [Defendant] in writing of [Plaintiff's] copyrights in the Work, and demanded that it cease the infringing use of the Work and pay a license fee for the unauthorized use of the Work" (Dkt. #34 at p. 9). Plaintiff initiated suit after Defendant failed to adhere to its demands (Dkt. #34, at p. 9). Accordingly, like the defendant in *Broadcast Music, Inc*., Defendant willfully infringed upon Plaintiff's copyright.

Based on Plaintiff's Motion, Defendant was notified of the infringement before litigation commenced but failed to respond to Plaintiff's notices. Moreover, Defendant's co-owner was served with the Amended Complaint and summons but Defendant did not appear or otherwise participate in this suit. Finally, Defendant has not compensated Plaintiff for its infringement (Dkt. #34, at p. 9). This information indicates that Defendant did not "cooperate[] in the events leading up to and during the litigation." *C.f. Wearable Shoe Tree, LLC*, 2025 WL 872524, at *10. Accordingly, factor six, "whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced," favors Plaintiff.

Finally, factor seven, "the potential for discouraging the defendants," is neutral. Plaintiff argues that an award of statutory damages will "deter future violations of copyright law" (Dkt. #34, at p. 16). However, Plaintiff does not explicitly note that Defendant will or will not be deterred in the future. Moreover, no evidence has been presented that Defendant regularly infringes on Plaintiff's copyrights or has continued to do so at this time. *See id*. As such, this factor is neutral.

The court finds five neutral factors and two factors that favor an award of enhanced statutory damages. As such, an award of $50,000.00 against Defendant is not warranted. Given this, the court recommends an award of the statutory minimum for each copyright infringement. Plaintiff presented two instances of infringement in his Amended Complaint and Motion. As such, Plaintiff should be awarded $1,500.00 (*See* Dkt. #22-2, at pp. 2-3; Dkt. #34, at pp. 8-9).

### Attorney's Fees and Costs

An award of attorney's fees and costs are specifically recoverable under 17 U.S.C. § 505; in fact they are considered routinely recoverable in successful copyright infringement cases. *Broad. Music, Inc. I*, 2019 WL 7882555, at *5. In the context of a default judgment, courts determine if a plaintiff is entitled to attorney's fees and costs based on the following factors: "frivolousness, motivation, objective unreasonableness concerning both factual and legal components of the case, and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* Upon a finding that plaintiff is entitled to attorney's fees and costs using the factors above, the court "must use the lodestar method to determine the reasonable amount" to award to plaintiff. *Id.* at *6 (citing *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998)).

This action was not frivolous based on Defendant's blatant copyright infringement (*See* Dkt. #34, at pp. 8-9). *See id*, at *6. Plaintiff's motive in this suit was simply "to enforce [his] rights

under the law—and to seek damages for [Defendant's] willful…infringement." *Id.* Additionally, seeing as Plaintiff provided the necessary evidence at each step of this default judgment, Plaintiff has not been objectively unreasonable in his factual or legal assertions in this case. *See id.* Finally, as explained above, while Plaintiff did not provide proof that the damages awarded against Defendant would necessarily deter Defendant from any future copyright infringements, Plaintiff's Counsel worked diligently and expended efforts and resources in dealing with Defendant's infringement and unresponsive nature (*See* Dkt. #34-4). Accordingly, there are considerations of compensation to contemplate. Based on the factors outlined above and the Fifth Circuit's command that attorney's fees and costs be "the rule rather than the exception" in copyright infringement cases, this court recommends that Plaintiff be entitled to recover attorney's fees and costs. *See Micromanipulator Co. v. Bough,* 779 F.2d 255, 259 (5th Cir. 1985).

Plaintiff seeks $5,570.84 in attorney's fees and costs, but recovery of this amount is dependent upon the court's examination of the loadstar method—of which Plaintiff carries the burden of proving "that the hourly rate and number of hours expended on the litigation was reasonable and necessary." *See Broad. Music, Inc. I,* 2019 WL 7882555, at *6. This method requires the court to first "calculate[] a 'lodestar' fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers." *Id.* Then the court must determine whether it should adjust the loadstar figure based on the following twelve factors:

> (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.*

Plaintiff seeks $5,570.84 in attorney's fees and costs as the "prevailing party in this action" (Dkt. #34, at pp. 18-19). Plaintiff attaches an affidavit from his Counsel, Matthew Rollin, as support along with his Counsel's billing invoice (*See* Dkt. #34-2; Dkt. #34-4). Rollin avers that his billing rate was $400.00 per hour and then $450.00 per hour based on his "more than four years of experience… and the market" (Dkt. #34-2, at p. 2). The billing invoice states that Rollin spent 6.6 hours on the case revising the Complaint, drafting his affidavit in support of the default, updating documents, drafting the Motion, reviewing case details, and finalizing the "[d]efault package" (Dkt. #34-4, at pp. 2-3). Rollin further details that his paralegal "had a billing rate of $250.00 which later increased to $300.00 per hour" and these rates were reasonable given "her experience [over 25 years] and the market" (Dkt. #34-2, at p 2). Rollin's paralegal spent 5.7 hours on the case reviewing it, preparing exhibits, investigating Defendant, drafting various case documents, filing, preparing summons, and emailing (Dkt. #24-4, at pp. 2-3).

Rollin also detailed that his firm charged $250.00 an hour for a "Summer Law Clerk['s]" work and this amount was "reasonable based on [the Summer Law Clerk's] experience and the market" (Dkt. #34-2, at p. 2). At the time the Summer Law Clerk worked on the case, he had not yet started his last year of law school (Dkt. #34-2, at p. 2). The Summer Law Clerk spent two hours on the case, specifically "work[ing] on incorporating [Rollin's] edits into final default judgment" (Dkt. #34-4, at p. 3). This resulted in $5,015.00 in attorney's fees for 14.3 hours of work (Dkt. #34-4, at p. 3). The billing invoice also charged $555.84 for expenses spent on the case, including the federal filing fee, service costs, and Texas Secretary of State records (Dkt. #34-4, at p. 3).

Rollin's affidavit and the attached billing invoice fails to detail the actual experience that Rollin, his paralegal, and the Summer Law Clerk have (*See* Dkt. 34-2; Dkt. #34-4). No information

was given regarding these parties' experience in the field of copyright and/or intellectual property litigation, nor where and when that experience was gained (*See* Dkt. 34-2; Dkt. #34-4). *C.f. Broad. Music, Inc.*, No. 6:18-CV-591-JDK, 2019 WL 7882557, at *2 (E.D. Tex. Jun. 13, 2019) [hereinafter *Broad. Music, Inc. II*]. Moreover, Rollin fails to present any evidence of an objective measure and/or reference to determine the reasonableness of the rates charged given the parties' alleged experience and expertise. *See id.* The sole proof presented of the reasonable number of hours expended on the case and the reasonable hourly rates for the participating parties stems from Rollin's own unsupported affidavit (*See* Dkt. 34-2). "The [c]ourt cannot determine whether the requested fees are reasonable without information that permits a lodestar calculation." *Broad. Music, Inc. I*, 2019 WL 7882555, at *6. Accordingly, the court recommends that Plaintiff's attorney's fees and costs be denied, subject to refiling if Counsel so chooses.

### Pre and Post-Judgment Interest

Plaintiff argues he is "entitled to pre and post-judgment interest for the total damage award, including his award of fees and costs" (Dkt. #34, at p. 19). 28 U.S.C. § 1961 states that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." This applies to post-judgment interest in successful default judgments on copyright infringement cases. *See Broad. Music, Inc. I*, 2019 WL 7882555, at *7. Since this court recommends that Plaintiff recover a money judgment against Defendant for Defendant's default, it also recommends that Plaintiff recover post-judgment interest. *See id.* Post-judgment interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). As such, the post-judgment interest should be calculated from the date of entry of judgment at a rate to be

determined. *See Selected Interest Rates (Daily) - H.15*, BD. GOVERNORS FED. RSRV. SYS. (Oct. 16, 2025), https://www.federalreserve.gov/releases/h15/.

When plaintiffs plead federal causes of action, like Plaintiff did in asserting 17 U.S.C. § 501(a) violations against Defendant, courts typically employ a two-step analysis to determine "whether prejudgment interest should be awarded: does the federal act creating the cause of action preclude an award of prejudgment interest, and if not, does an award of prejudgment interest further the congressional policies of the federal act." *Powell v. Penhollow*, No. 3:04-CV-1744-BF(H), 2009 WL 10703687, *3 (N.D. Tex. May 20, 2009) [hereinafter *Powell II*]. The Copyright Act is silent regarding pre-judgment interest, but the Fifth Circuit has stated the Act does not preclude such an award. *Id.* Additionally, the majority of Circuits that have encountered the second part of this analysis have determined that the Copyright Act generally "permits an award of prejudgment interest…[such that] prejudgment interest is available to parties who prevail under the Copyright Act to compensate the wronged party for being deprived of the monetary value of his loss and for the deterrence of infringement." *Id*; *See Powell v. Penhollow*, 260 Fed. Appx. 683, 691 n. 7 (5th Cir. 2007) [hereinafter *Powell I*].

Since the Copyright Act allows an award of prejudgment interest and most analyzing Circuits have found that an award of prejudgment interest furthers the congressional policies of the Act, the decision to "to award prejudgment interest based upon the facts in this case rests in [the] [c]ourt's discretion." *Powell II*, 2009 WL 10703687, at *3. Like *Powell*, this court concludes that "prejudgment interest is available to parties who prevail under the Copyright Act to compensate the wronged party for being deprived of the monetary value of his loss and for the deterrence of infringement." 2009 WL 10703687, *3. Given that Plaintiff has not established either element, the court recommends that Plaintiff not be awarded prejudgment interest. *See id.*

**Injunctive Relief**

Finally, Plaintiff asks the court to impose a permanent injunction against Defendant (Dkt. #34 at p. 6). 17 U.S.C. § 502(a) authorizes courts to award temporary and final injunctions in copyright infringement cases "on such terms as [they] deem reasonable to prevent or restrain infringement." However, to receive such relief a plaintiff must prove

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Goode Time Productions, L.L.C. v. Just*, No. 4:19-CV-58-SDJ, 2020 WL 5518098, at *8 (E.D. Tex. Sept. 14, 2020) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). Each of the elements outlined above must be met. *Broad. Music, Inc. I*, 2019 WL 7882555, at *3 ("the four ***requirements*** for a permanent injunction") (emphasis added).

Plaintiff claims he suffered irreparable injury. Plaintiff argues that irreparable harm is "presumed in copyright cases where there is a showing of reasonable likelihood of success on the merits" (Dkt. #34, at p. 17). Plaintiff further argues that "a successful default judgment satisfies the element of success on the merits, and no further showing of irreparable injury is necessary" (Dkt. #34, at p. 17). However, "a finding of liability for infringement does not automatically entitle a plaintiff to a permanent injunction." *Goode Time Productions, L.L.C.*, 2020 WL 5518098, at *8. More specifically, even in the context of a granted default judgment for a copyright infringement case, plaintiffs must still "establish[] a substantial threat of irreparable injury" through evidence. *Broad. Music, Inc. I*, 2019 WL 7882555, at *3. Though evidence may exist of Plaintiff's irreparable injury, Plaintiff failed to point to such evidence to support its "burden regarding the [] requirements for a permanent injunction." *Id.* Plaintiff "has failed to detail the nature and extent

19

of these harms, [thus] precluding a conclusion that these injuries are irreparable." *Goode Time Productions, L.L.C.*, 2020 WL 5518098, at *8.

The only other element Plaintiff addresses is the public interest factor. Plaintiff claims that there is an "interest in upholding copyright protections" through the issuance of permanent injunctions (Dkt. #34, at p. 17). The court agrees that generally injunctions against known copyright infringers serve the public interest by forcing infringers to "comply with copyright laws." *Broad. Music, Inc. I*, 2019 WL 7882555, at *4. However, due to Plaintiff's failure to provide adequate evidence of elements one, two, and three, the court recommends that Plaintiff's request for a permanent injunction against Defendant be denied. *See Goode Time Productions, L.L.C.*, 2020 WL 5518098, at *8.

## CONCLUSION AND RECOMMENDATION

The court recommends that Plaintiff's Motion for Default Judgment (Dkt. #34) be **GRANTED in part**. The court further recommends that Defendant pay Plaintiff $1,500.00 in statutory damages plus post-judgment interest at a rate to be determined. The court finally recommends that all other relief be denied.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 4th day of February, 2026.**

AILEEN GOLDMAN DURRETT
UNITED STATES MAGISTRATE JUDGE